UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARY E., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C22-5090-SKV <br><br> ORDER REVERSING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of her application for Supplemental Security Income (SSI). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1975, has a GED, and has worked as a lead worker and director of a facility for developmentally disabled sex offenders. AR 238. Plaintiff was last gainfully employed in 2011. AR 425.

In October 2018, Plaintiff applied for benefits, with an amended alleged onset date of December 1, 2016. AR 185-86, 406-11. Plaintiff's application was denied initially and on

reconsideration, and Plaintiff requested a hearing. AR 311-14, 318-24. After the ALJ conducted hearings in July and December 2020 (AR 210-77), the ALJ issued a decision finding Plaintiff not disabled. AR 185-204.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity since the application date.

**Step two**: Plaintiff has the following severe impairments: lumbar degenerative disc disease; bilateral carpal tunnel syndrome, status post release; migraine headaches; chronic pelvic pain status post hysterectomy; obesity; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder; and substance abuse disorder.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC)**: Plaintiff can perform light work with additional limitations: she cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She can frequently reach overhead and froward, and she can frequently handle and finger. She must avoid concentrated exposure to vibration and hazards as defined by the Dictionary of Occupational Titles. She can do simple, routine tasks. She cannot have contact with the public or perform team tasks, but she can have occasional, superficial contact with co-workers. She requires a sit/stand option (defined as the ability to change position after 30-60 minutes for 3-5 minutes at a time while continuing to work on her assigned task).

**Step four**: Plaintiff cannot perform past relevant work.

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 185-204.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-7. Plaintiff appealed the final decision of the Commissioner to this Court. Dkt. 4.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, App. 1.

# LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

# DISCUSSION

Plaintiff argues the ALJ erred in discounting her allegations, assessing certain medical opinions, failing to account for all of her migraine-related limitations, and declining to reopen Plaintiff's prior applications. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

**A.      The ALJ Erred in Discounting Plaintiff's Alleged Mental Limitations**

The ALJ summarized Plaintiff's allegations and explained that she discounted them because: (1) the objective medical evidence contains many normal or mild findings, and thus does not support Plaintiff's allegation of disabling symptoms; (2) Plaintiff reported that her pain and physical symptoms were largely controlled by medication and conservative treatment; and (3) Plaintiff's physical and social activities are inconsistent with her alleged limitations.  AR 192-97.  Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons to discount a claimant's testimony.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff argues that the ALJ's reasons to discount her alleged mental symptoms are not legally sufficient, and the Court will address each of her arguments in turn.  First, Plaintiff argues that the ALJ erred in finding that the objective evidence related to her mental impairments was largely normal or mild, because, as the ALJ herself even acknowledged,

> [m]ental status examinations revealed [Plaintiff] to have depressed and labile moods with tearful, emotional and labile affect, somnolent/lethargic psychomotor activity, hyperventilation, poor eye contact, rapid speech, racing thoughts and flight of ideas.  In addition, [Plaintiff] has reported daily suicidal ideation with one attempt, fear of leaving her home due to panic, irritability and edginess in public, difficulty attending to her personal hygiene and feeling paralyzed and overwhelmed.

AR 200 (citing AR 547, 578, 685, 688, 694-95, 700, 867).[3]  The ALJ indicated that these findings indicated that Plaintiff had certain cognitive and social limitations, but that "a more

---

[3] Other mental status examination findings in the record are similar to those cited by the ALJ. *See, e.g.*, AR 555 (rapid speech), 559 (emotional, tearful presentation), 568 (rapid speech, racing thoughts), 571 (same), 574 (same), 594 (suicidal ideation), 608 (same), 628 (disheveled, somnolent/lethargic, racing thoughts), 631 (daily suicidal ideation), 634 (daily suicidal ideation), 637 (racing thoughts), 640 (rapid speech, tangential thought process, flight of ideas), 643 (poor hygiene/grooming, disheveled, racing thoughts), 646 (disheveled, tangential thought process, suicidal ideation), 666 (suicidal ideation), 691 (tearful), 715 (daily suicidal ideation), 718 (tearful), 721 (tearful, suicidal ideation), 738 (suicidal ideation), 1785-86 (abnormal findings as to perception, concentration, insight/judgment), 1791 (same).

ORDER REVERSING THE COMMISSIONER'S
DECISION - 4

restrictive mental [RFC] is not warranted, as mental status examinations were mostly unremarkable." AR 200.  Plaintiff contends that the findings summarized by the ALJ are not reasonably characterized as "unremarkable," and the Court agrees.  Although the ALJ pointed to some unremarkable findings in areas such as memory, behavior, and concentration (AR 197), the findings particularly as to Plaintiff's daily suicidal ideation cannot be reasonably described as unremarkable.  The ALJ erred in cherry-picking the normal findings from a record that also documents significant abnormal findings, without adequately explaining why she found that the wealth of abnormal findings did not corroborate Plaintiff's allegations of disabling mental limitations.  *See Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984) (explaining that an ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result").

Plaintiff also disputes whether the activities cited by the ALJ contradict her allegations of mental limitations, noting that even if she can sometimes, on a good day, leave her house for appointments, complete simple household chores, and play with her child, these activities are not "commensurate with competitive work." Dkt. 11 at 15.  The Court agrees that the ALJ erred in characterizing Plaintiff's activities, because, as even the ALJ acknowledged (AR 192), Plaintiff described experiencing difficulty with or requiring help with many of the activities the ALJ listed, yet the ALJ did not acknowledge Plaintiff's limited ability to complete the activities listed, when finding that they undermined her allegations.  *See* AR 197.  Again, the ALJ's characterization of the record amounts to cherry-picking, rather than accounting for the context of the entire record.

Because neither of the ALJ's reasons for discounting Plaintiff's mental allegations is clear and convincing, the Court finds reversible error in the ALJ's assessment of these allegations.

Although Plaintiff requests in the alternative that the ALJ's error be remedied by a remand for a finding of disability, the Court declines to order this extraordinary remedy, in light of the ALJ's unchallenged reasons for discounting Plaintiff's physical allegations, as well as the outstanding conflicts in the record as to the extent of Plaintiff's mental limitations. *Leon v. Berryhill*, 880 F.3d 1044, 1045 (9th Cir. 2017) ("An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule."); *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015) ("The ALJ's well-supported credibility concerns raise additional factual issues that require resolution."). Because further proceedings would serve the useful purpose of permitting the ALJ to resolve the conflicts in the record, the Court finds that the appropriate remedy for the ALJ's errors is a remand for further proceedings.

### B. The ALJ Did Not Err in Discounting Plaintiff's Migraine Limitations

Plaintiff testified that she experiences migraines that are occasionally so severe that she requires treatment in the emergency room, and she had been to the emergency room four times in the past year for migraines. AR 255-56. Plaintiff argues that although the ALJ included migraine headaches as a severe impairment at step two, the ALJ erred in failing to include any limitations associated with Plaintiff's migraines when assessing her RFC. Dkt. 19 at 6-7.

Plaintiff did not allege any particular limitations due to her migraine headaches, however. At the hearing, she described experiencing four headaches in the past year that were severe enough to require emergency treatment. *See* AR 255-56. She also testified that she has 2-4

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

migraines per month, and that she uses only preventative, rather than abortive, medications for them.  AR 265-66.

This testimony is not entirely corroborated by the record, which does document some complaints of migraines, but the treatment notes do not identify any particular functional limitations resulting from Plaintiff's migraines, and they also suggest that the headaches are at least somewhat responsive to medication.  *See* AR 1328 (Plaintiff reports to neurologist in November 2019 that she experiences 3-5 migraines per month, in addition to a chronic daily headache), 1374-75 (Plaintiff reports to neurologist in April 2020 that she experiences "frequent headaches which are disabling for her"; neurologist prescribes new medication dosage, for preventing and aborting headaches), 1537 (Plaintiff seeks emergency treatment for a headache in February 2020), 1748 (Plaintiff reports to ophthalmologist in July 2020 that she has migraines a couple of times a month, one lasted a couple of weeks; medication "seems to help").  The ALJ cited treatment notes showing that Plaintiff's migraine symptoms, among other physical complaints, improved with medication.  *See* AR 197 (citing *inter alia* AR 1748).

Because the record as currently constituted does not support the existence of any particular limitations attributable to migraines, and supports the ALJ's finding that Plaintiff's migraines improved with medication, the Court finds no error in the ALJ's assessment of that condition in the decision.

On remand, however, Plaintiff will have the opportunity to present additional evidence regarding her migraine headaches and the limitations caused by them.

### C. The ALJ Did Not Err in Assessing Medical Opinion Evidence

Plaintiff argues that the ALJ erred in finding the opinions of her treating psychologist, Ruth Currah, Ph.D., and consultative examiner Ian Hollows, D.O. The Court will address each disputed opinion in turn.

#### 1. Legal Standards

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

#### 2. Dr. Currah

Dr. Currah completed a form opinion in December 2020, indicating that Plaintiff had limitations in many areas of workplace functioning and would require, *inter alia*, 8-16 rest periods per workday of at least 15-20 minutes. AR 1774-79. Dr. Currah noted that she performed testing, but only summarized her findings and did not attach the test results. *See* AR 1779.

The ALJ found Dr. Currah's opinion to be unpersuasive because it was unsupported by any specific objective findings, "making it impossible to determine the validity of [her] testing or request review from another psychologist." AR 201. The ALJ also found that the "rather extreme" functional limitations described by Dr. Currah were inconsistent with the "unremarkable" mental status examinations in the record, and also inconsistent with Plaintiff's ability to perform activities of daily living. AR 201-02.

As indicated *supra*, the Court finds that the ALJ erred in characterizing Plaintiff's mental status examinations as unremarkable because many of them document suicidal ideation and other thought content/process abnormalities, and the ALJ overstated the extent of Plaintiff's ability to complete activities independently. Thus, the ALJ erred in finding Dr. Currah's opinion to be inconsistent with that evidence.

But the ALJ did not err in finding Dr. Currah's opinion to be unsupported by specific clinical findings. Dr. Currah did not explain how any particular findings supported the frequent breaks she found that Plaintiff would require, nor did she support her conclusion that Plaintiff required help getting out of bed, showering more often than once a month, and would require help to work. *See* AR 1775. As noted by the ALJ, Dr. Currah summarized findings that cast doubt on the validity of Plaintiff's testing, noting that some of her scores were elevated, including her hypochondriasis score, and that some of her answers appeared random and/or calculated to make her "look bad." *See* AR 1779. The ALJ's supportability finding does not appear to be fueled by paranoia, as posited by Plaintiff (Dkt. 19 at 4-5), but is grounded in Dr. Currah's own summary of Plaintiff's test results. Because Dr. Currah did not support her conclusions with reference to objective findings, and instead summarized testing that casts at least some degree of doubt on the validity of the testing, the ALJ reasonably found that Dr. Currah's conclusions were unsupported. The ALJ therefore did not err in finding Dr. Currah's opinion to be unsupported, or in finding it unpersuasive on that basis.

       3.     *Dr. Hollows*

Dr. Hollows examined Plaintiff in March 2019 and wrote a narrative report opining that Plaintiff could perform the sitting/standing/walking/lifting/carrying associated with light work, but with additional postural, reaching, and manipulative limitations. AR 676-82. The ALJ found

this opinion partially persuasive, finding that Plaintiff had greater postural restrictions than Dr. Hollows described, but that the manipulative limitations he indicated (a limitation to occasional fingering and feeling) were inconsistent with evidence that Plaintiff's carpal tunnel syndrome symptoms improved after surgery.  AR 198.

Plaintiff argues that the ALJ erred in finding Dr. Hollows' manipulative limitations to be unpersuasive because, as the ALJ acknowledged, Dr. Hollows' manipulative limitations were supported by his examination findings, specifically a positive Tinel's sign and decreased sensation in the hands.  Dkt. 19 at 6 (citing AR 680-81).  But the ALJ also noted that at the administrative hearing, Plaintiff testified that her carpal tunnel release surgeries resolved her hand-related symptoms.  AR 198 (citing *inter alia* AR 255 (Plaintiff's affirmative answer when asked whether her surgeries "ultimately provide[d] you with relief from the symptoms you were having in your hands")).  Plaintiff's hearing testimony is inconsistent with the manipulative limitations identified by Dr. Hollows, and the ALJ's consistency finding is therefore supported by substantial evidence.  Because the ALJ reasonably found Dr. Hollows' opinion as to Plaintiff's manipulative limitations to be inconsistent with the record, Plaintiff has not shown that the ALJ erred in finding Dr. Hollows' opinion to be only partially persuasive on this basis.

### D. Plaintiff May Request Reopening of Prior Applications on Remand

At the hearing, Plaintiff's representative requested that the ALJ reopen prior applications that were denied in July 2017 and April 2018 because new and material evidence had been submitted related to Plaintiff's carpal tunnel syndrome that could relate back to the period in which she was insured for Disability Insurance Benefits.  *See* AR 225-26.  The ALJ noted that none of the evidence predated Plaintiff's date last insured (December 31, 2016), and preliminarily ruled at the hearing that the prior applications were administratively final and

would not be reopened. AR 226-28. In the written decision, the ALJ declined to reopen the prior applications because the denials were administratively final "and no new and material evidence supports disturbance of these prior findings." *See* AR 186. The ALJ's refusal to reopen the prior applications led to the ALJ's refusal to consider medical opinions from treating therapist Lauren Mallory, MSW, and examining physician Tova Fuller, M.D., Ph.D., written in February 2018 and April 2018, respectively, and submitted as part of the most recent prior application. *See* AR 197. The ALJ found that because the initial determination denying Plaintiff's prior application is "administratively final, these opinions will not be considered or evaluated in connection with the claimant's current application." *Id.*

Plaintiff argued in her opening brief (Dkt. 11 at 15-16) that the ALJ erred in refusing to reopen the prior applications because she applied the wrong standard, because a showing of new and material evidence was not required under the applicable regulation. *See* 20 C.F.R. § 416.1488(a) (authorizing an ALJ to reopen a prior claim within twelve months of the notice of the initial determination, "for any reason").

The Court asked the parties to submit supplemental briefing as to whether the Court has jurisdiction to review the ALJ's decision not to reopen the prior applications. *See* Dkt. 20-22. The parties' supplemental briefs agree that an ALJ's denial of a request to reopen a prior determination or decision is generally not a final decision subject to judicial review. *See* 42 U.S.C. § 405(g) (indicating that judicial review is available only for a "final decision" of the Commissioner); 20 C.F.R. § 416.1403(5) (listing a decision denying a request to reopen a prior determination or decision as one type of decision that is not subject to judicial review).

For the first time in her supplemental brief, Plaintiff notes that there are two exceptions to this general rule, and argues that both of them apply here. *See* Dkt. 21. One exception applies

ORDER REVERSING THE COMMISSIONER'S
DECISION - 11

where an ALJ's decision not to reopen a prior application is challenged on constitutional grounds, and another applies where an ALJ *de facto* reopens a prior application. *See* Dkt. 21 at 1-2. According to Plaintiff, her mental limitations were so severe at the time that her prior applications were filed that she did not realize that she could have requested reconsideration of her initial denials, rather than filing new applications. Dkt. 21 at 2. Plaintiff contends that under these circumstances, she has asserted a judicially reviewable colorable constitutional claim for denial of due process. *Id.* Plaintiff also argues that the second exception applies here because the ALJ *de facto* reopened the prior applications by accepting the amendment of her alleged onset date to December 31, 2016, and considering evidence dating back to 2017 (before her prior applications were denied). Dkt. 21 at 5.

The Commissioner contends that because Plaintiff did not present any argument regarding exceptions that would support judicial review in her opening brief, she should not be permitted to do so for the first time in a supplemental brief. Dkt. 22 at 3. Indeed, neither Plaintiff's opening brief nor her reply brief acknowledged the general rule that denials of request to reopen prior applications are not reviewable, nor did Plaintiff assert that an exception to that general rule applied. *See* Dkt. 11 at 15-16.

The Court finds that, because this case must be remanded on other grounds as discussed *supra*, Plaintiff will have the opportunity on remand to renew her request for reopening of her prior applications on the grounds she raised for the first time to this Court. *See, e.g.*, *Terry T. v. Saul*, 2021 WL 2313197, at *2 (D. Or. Jun. 7, 2021). As noted *supra*, Plaintiff presented a different argument for reopening to the ALJ at the prior hearing, and the ALJ suggested in the decision that good cause for reopening was required. *See* AR 186. On remand, the ALJ may

ORDER REVERSING THE COMMISSIONER'S
DECISION - 12

consider a renewed reopening request under the applicable regulation.  *See* 20 C.F.R. § 416.1488(a).

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should reconsider Plaintiff's testimony as to her mental limitations, and may reconsider any other parts of the decision as necessary, including any request to reopen prior applications.

Dated this 1st day of November, 2022.

*S. Kate Vaughan*
S. KATE VAUGHAN
United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER'S
DECISION - 13